929 P.2d 1355

MAUI COUNTY COUNCIL and Goro Ho-
kama, in his official capacity as Chair of
the Maui County Council, Plaintiffs–Ap-
pellants,

v.

Travis THOMPSON, in his official capaci-
ty as Director of Finance, County of
Maui; Guy Haywood, in his official ca-
pacity as Corporation Counsel, County
of Maui; Linda Crockett Lingle, in her
official capacity as Mayor of the County
of Maui, Defendants–Appellees.

No. 18578.

Supreme Court of Hawai'i.

Dec. 5, 1996.

Reconsideration Denied Jan. 29, 1997.

Jon M. Van Dyke and Sherry P. Broder,
on the briefs, Honolulu, for plaintiffs-appel-
lants.

David M. Jorgensen, Deputy Corporation Counsel, on the briefs, Wailuku, Maui, for defendants-appellees.

J.P. Schmidt, Corp. Counsel, Wailuku, Maui, for plaintiffs-appellants on motion for reconsideration.

Charles K.Y. Khim, Honolulu, amicus curiae for Hawaii Government Employees Assoc., AFSCME Local 152, AFL–CIO, on motion for reconsideration.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

In this declaratory judgment action, the Maui County Council ("council") appeals the dismissal by summary judgment of its suit alleging that Travis Thompson, in his official capacity as Director of Finance, County of Maui, Guy Haywood, in his official capacity as Corporation Counsel, County of Maui, and Linda Crockett Lingle, in her official capacity as Mayor of the County of Maui (collectively, "defendants") violated the Maui County Charter ("charter"). We reverse.

## I. BACKGROUND

The ground was laid for this suit in 1992, when William P. and Jo Ann Carroll brought an action against the County of Maui (county) for wrongful discharge. Their complaint additionally alleged that Mayor Lingle and others had committed wilful and intentional wrongful acts in their individual capacities. Maui County Charter section 8–2.3(b) restricts the Office of Corporation Counsel's representation to "matters relating to ... official duties." Because the county officers and employees were also sued in their individual capacities, they were advised by Maui's corporation counsel that conflicts could arise regarding the defenses that might be raised on behalf of the county. The corporation counsel recommended that the named individual defendants be separately represented, and authorized these individuals to retain attorneys of their choice at the county's expense.

The Office of the Director of Finance executed contracts for $30,000 for one law firm and $50,000 for another. Each contract was subsequently amended, such that the first amounted to $140,000 and the latter $450,000. The council was not asked to approve these contracts or amendments. On January 21, 1994, the council passed a resolution formally noting its disapproval of the executive branch's action. The council filed their complaint in this action on June 3, 1994. The parties each filed motions for summary judgment. On November 10, 1994, the court granted the defendants' motion. This timely appeal followed.

## II. DISCUSSION

The interpretation of the charter is similar to the interpretation of a statute. And

[t]he standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews de novo. In addition, our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.

State v. Baron, 80 Hawai'i 107, 113, 905 P.2d 613, 619, reconsideration granted in part and denied in part, 80 Hawai'i 187, 907 P.2d 773 (1995) (citation omitted).

We begin our analysis with the language of the Maui County Charter itself. Section 2-2 of the charter states that "[a]ll powers of the county shall be carried into execution as provided by this charter, or, if the charter makes no provisions, as provided by ordinance or resolution of the county council." Pursuant to the charter's section 8–2.3(b), the corporation counsel is "the chief legal advisor and legal representative to the council, the mayor, all departments, all boards and commissions, and of all officers and employees in matters relating to their official duties." But section 3-6(6) of the charter delineates the council's prerogative in

the hiring of outside attorneys: "the council shall have the power ... [t]o retain or employ, by a vote of two-thirds of its entire membership, special counsel for any special matter presenting a real necessity for such employment."

■ The council asks this court to hold that members of the executive branch of Maui County exceeded their authority by using public funds to employ special counsel to represent the personal interests of county officers and employees accused of committing intentional torts. Relying on case law and the language of the charter, the council asserts that the power to hire special counsel rests with the council and the council alone. The defendants claim that the executive branch shares this power, either expressly or by implication, as part of its inherent power.

It has long been the law in this and other jurisdictions that

> [i]t is within the discretionary power of a municipality to indemnify one of its officers against liability incurred by reason of any act done by him while in the bona fide discharge of his official duties, and the municipality has the right to employ counsel to defend the officer or to appropriate funds for the necessary expenses incurred by him in such defense.

*Machado v. Bal*, 31 Haw. 559, 564 (1930) (quoting 43 C.J. 695); *see also* E. McQuillin, *The Law of Municipal Corporations* § 29.14 (3d ed.1990). However, a municipality is under no legal obligation to do so, even for actions within the scope of official duties:

> It would seem ... to be wisest to leave the indemnification of the officer to the discretion of those who represent the interests of the city, that, on the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and, on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution.

*Machado*, 31 Haw. at 564 (quoting *Moorhead v. Murphy*, 94 Minn. 123, 102 N.W. 219, 220 (1905)).

*Machado* involved a dispute as to the power of the Maui council to indemnify a police officer for his legal expenses incurred in both criminal and civil proceedings arising out of an incident in which the officer shot a person in the course of executing an arrest warrant. The relevant statutory provision provided—in language reminiscent of the current Maui Charter—that "[n]othing ... shall preclude the board of supervisors of any county from retaining or engaging special counsel when in their opinion such action may seem to be desirable or required." *Id.* at 565. This court concluded "that it is within the power of a county board of supervisors to indemnify a police officer for attorney's fees incurred in defending himself in a civil action...." *Id.*

The council clearly has the authority to decide whether or not to repay the legal fees incurred by an officer or employee in an action arising out of his or her employment. The question in this case, however, is somewhat different: does the council's power necessarily imply the absence of any such power in the executive branch. We think that it does.

Discussing the Honolulu charter, this court has observed:

> The charter has as its basic scheme a clear and definite separation of the legislative power and the executive power of the city and county, vesting the former in the legislative branch represented by the council and the latter in the executive branch headed by the mayor. Under the separation of powers so provided, each branch is coordinate with the other, and neither may exercise the power vested in the other.

*Akahane v. Fasi*, 58 Haw. 74, 81, 565 P.2d 552, 557 (1977) (quoting *City Council v. Fasi*, 52 Haw. 3, 5, 467 P.2d 576, 578 (1970)). Courts have been reluctant to imply municipal authority to employ an attorney. McQuillin, *supra*, at § 29.11. The general rule regarding the power of appointment is that, in the absence of express authorization in the charter or elsewhere, "the common council of the municipality is the only authority which can exercise it." *Id.* at § 12.74 (footnote omitted). As the New Jersey Supreme Court has held in related circum-

stances, "neither the director of revenue and finance nor the law department itself could delegate the trust to outside council nor retain the services of 'special counsel' . . . unless consent to this end were given by the board of commissioners[.]" *Slurzberg v. Bayonne,* 29 N.J. 106, 148 A.2d 171, 173 (1959); *see also* McQuillin, *supra,* at § 29.15 ("where the power to hire an attorney is vested by charter in the city council, it cannot be delegated to another officer or board.") (footnote omitted). For its part, the Honolulu charter makes explicit the necessity for the council's approval in the hiring of special counsel:

1.  Special deputies may be appointed by the corporation counsel, with the approval of the city council. . . .

2.  No special counsel shall be retained to represent the city or any officer or executive agency, except as otherwise provided in this charter.

Revised Charter of the City and County of Honolulu 1973 (1994 ed.) at § 5–204.

Courts in New York and elsewhere have long adhered to the rule that, absent extraordinary circumstances, "a municipality may not be compelled to compensate for services rendered by an attorney unless his retainer is authorized by statute or appropriate resolution of the governing body." *Corning v. Village of Laurel Hollow,* 48 N.Y.2d 348, 422 N.Y.S.2d 932, 934, 398 N.E.2d 537, 539 (1979) (citations omitted); *see also Slurzberg,* 148 A.2d at 173–74 (noting that this "principle is so fundamental in the statutory scheme as to be incontestable"); *Moffatt v. Christ,* 74 A.D.2d 635, 425 N.Y.S.2d 157, 158 (1980) ("an attorney may not be compensated with public funds for services rendered a municipal officer unless the attorney has been retained in accordance with statutory authority"). As the New York Court of Appeals explained in *Corning,* the underlying rationale is "to guard against extravagance and collusion on the part of public officials[.]" 422 N.Y.S.2d at 934, 398 N.E.2d at 539.

■ Of course, we do not suggest that such is the case here. And it is true, as a matter of policy, that "public indemnification of public officials serves in part to encourage public service." *Howard v. Town of Burlington,* 399 Mass. 585, 506 N.E.2d 102, 106 (1987). But this case is not about *whether* public officials should be reimbursed, but about which branch of government has the power to decide that question. Municipalities often reimburse officials for legal fees incurred in defending themselves from claims brought against them in their individual capacities. But there is no legal or moral duty to reimburse unless the disputed action affects the public interest, relates to the employee's official duties, and the official was acting in good faith. *Machado,* 31 Haw. at 564; *see also Hart v. Sagadahoc,* 609 A.2d 282, 283 (Me.1992); McQuillin, *supra,* at § 12.137.

We recognize that the wall of separation between the branches of government is not impenetrable. *See Akahane,* 58 Haw. at 81, 565 P.2d at 557. But on the question before us the answer is clear. The corporation counsel's legal representation of officers and employees is confined to matters relating to their official duties. The council is expressly charged by the charter with the power to retain special counsel, a power that is carefully restricted by the necessity of a two-thirds majority vote. Maui County's duty to reimburse an officer or employee for expenses associated with a legal defense is, in the end, discretionary. An officer of the executive branch thus cannot expend public funds to employ such counsel, absent authority in the charter or approval by the council.

■ Defendants claim that the council cannot "alone determine for all others in the County whether legal counsel is necessary when Corporation Counsel cannot act." But the corporation counsel is free to determine—as it did in this case—that outside counsel was necessary due to the potential conflict of interest. What the executive branch cannot do unilaterally is use public funds to pay outside counsel to represent its own officers, where they have been accused of wilful and intentional wrongful acts committed in their individual capacities.

### III. *CONCLUSION*

We hold that the executive branch of Maui County exceeded its authority by employing special counsel with public funds to represent the personal interests of county officers and employees accused of committing intentional torts falling outside the scope of their official duties. The order granting defendants' motion for summary judgment is reversed, and we remand for entry of an order granting summary judgment in favor of the council.